ROLAND E. LAVOIE, GUARDIAN'S APPEAL FROM PROBATE

SUPERIOR COURT        FAIRFIELD COUNTY        FILE NO. 70217

Memorandum filed May 28, 1946.

*Boardman, Stoddard & McCarthy*, of Bridgeport, for the Appellant.

*Edward W. McPadden*, of Bridgeport, for Boucher, Ward & Reilly Inc.

KING, J. This is an appeal from an order and decree of the Probate Court for the district of Bridgeport, entered January 25, 1945. Most of the facts are substantially undisputed.

On October 17, 1944, Lillian Cresswick died at her home in Bridgeport, after an illness of about three months. She left two sons and a daughter, Muriel Irene Curnim, all three being the issue of a previous marriage, and also her husband, Benjamin Cresswick, to whom she had then been married about five years and with whom she was living at the time of her death.

Muriel Irene Curnim will become of age on July 12, 1946, and is now, and was at the time of her mother's death, a student nurse in a local hospital.

A short time before her death, Mrs. Cresswick changed the beneficiary in a $1,200 policy of insurance covering her life from her husband, Benjamin Cresswick, to her daughter, Muriel. Mr. Cresswick did not know of this change of beneficiary until after his wife's death, when Muriel showed the policy to the assembled members of her family at a conference held with one Boucher, representative of Boucher, Ward & Reilly, Inc., undertakers, to decide upon the funeral arrangements.

Boucher had come to the house in response to a telephone call made by some member of the family other than Muriel, had taken the body and had returned a little later to discuss plans for the funeral with some members of the decedent's family. At this discussion Muriel was present and told Boucher that there was a policy of insurance covering her mother's life, which she showed to Boucher and the others, including Mr. Cresswick; that her mother wished to be buried in a particular Catholic cemetery and not in a Protestant cemetery with Mr. Cresswick's first wife; and that she (Muriel) would pay for the funeral from the proceeds of the policy. It was not proved, as alleged in paragraph one of the special defense to the reasons

of appeal, that the decedent told Muriel that the proceeds of the policy were to be used for the decedent's funeral, or that Muriel so stated to Boucher or anyone else. There was no evidence from which it could be found that the proceeds of the policy were impressed with any trust in Muriel's hands.

Thereafter, the funeral took place as planned, one LaVoie was afterwards appointed guardian of Muriel's estate, and upon his advice she refused to pay the funeral bill of $734 on the ground of infancy.

Boucher, Ward & Reilly, Inc., applied to the Probate Court for the district of Bridgeport, which issued the order appealed from finding the funeral bill reasonable and "necessary under the provisions of Section 4623" of the General Statutes, and directing the guardian of Muriel's estate to pay it from the funds of his trust.

From this order and decree the guardian of the estate appealed. Johnson Stoddard, the present guardian of the estate and successor to LaVoie, was substituted as a party plaintiff and is prosecuting this appeal.

It is undisputed that Muriel definitely entered into an undertaking to pay the funeral bill, and also that she was a minor. Thus the only real question is whether the guardian of her estate can be compelled to pay on the ground that the funeral is to be included under the definition of "necessaries" as given in §4623 of the General Statutes. The Probate Court so held.

It was admitted that the decedent left no estate, so that no funds were available for the funeral from that source.

Obviously, the funeral was not a "necessary" in the sense of being anything required by the minor for her own physical needs. The most that could be claimed was that a funeral for one's mother might be a psychological need which would be termed a necessity if otherwise unprovided for. Here, however, there is no claim that Cresswick would have refused or neglected to provide his wife a funeral had Muriel not intervened. It was proved that he was financially able, and under the statute it was his duty, so to do. General Statute, § 4968. *Ford Co. v.Dudley,* 104 Conn. 519, 524. This disposes of any possible foundation for the Probate Court's decree.

If it should appear that the funeral was of an unreasonably expensive type, and the husband saw fit to raise such a question

in such a connection, it may be that his liability under the statute (§ 4968) would be limited to the reasonable cost of a reasonable funeral. This question is not involved in this proceeding, since it does not affect any liability of this minor or of her estate.

The order and decree of the Probate Court is reversed, set aside and vacated and a decree may enter denying and dismissing the application that the guardian of the estate of Muriel Irene Curnim pay from funds in his hands to Boucher, Ward & Reilly, Inc., said funeral bill of $734, or any part thereof.